In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00232-CR**
_____

**JEFFREY LANE BAKER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 18-09-12131-CR**

**MEMORANDUM OPINION**

Jeffrey Lane Baker appeals his conviction for forgery, a third-degree felony.[1]

*See* Tex. Penal Code Ann. § 32.21. After law enforcement stopped Baker for

speeding, they found him in possession of counterfeit bills and forgery

paraphernalia. In one issue, Baker challenges the trial court's denial of a jury charge

instruction under Code of Criminal Procedure article 38.23, allowing a jury "to

---

[1] Baker's conviction was enhanced to a third-degree felony because he was found to be a habitual offender.

determine whether the fruits of this stop were legal." *See* Tex. Code Crim. Proc. Ann. art. 38.23. We affirm the judgment of the trial court.

## Background

We limit the recitation of the background facts pertinent to the single issue presented. Trooper John Silva testified that on September 8, 2018, he was patrolling on Ford Road in Montgomery County. Silva stated that at approximately 11:40 p.m., he stopped his patrol car, perpendicular to Ford Road, facing north, observing traffic traveling east to west. Silva was "looking for . . . traffic violations[.]" Silva described the lighting conditions on Ford Road as "horrible" and the road as "very dangerous." He noticed a beige 2008 Nissan driven by Baker. According to Silva, he observed Baker's vehicle doing the following,

> I was facing north, watching traffic go east and west going into Kingwood, going out to Porter. I saw a vehicle. I heard the vehicle redlining or revving. When I say that, I mean I could hear the vehicle coming from a long distance off. It sounded like it was at max power, getting up to speed. Then I saw the vehicle pass from the east, go to the west towards Porter. And the vehicle then jammed on its brakes a few times, and I got behind the vehicle.

Silva testified that before he observed Baker's vehicle, he heard a "loud revving[]" of a vehicle's engine or "coming up to speed quickly[.]" Within a few seconds after hearing a car revving its engine, Baker's car passed Silva's patrol car. Based on a visual approximation of speed, Baker's vehicle was traveling "near 60 [miles per hour][.]" After Baker's vehicle passed him, he observed "heavy braking" which

"generally means [Baker] saw me, and now he knows, oh, shoot, I got to slow down, there's a cop."[2] According to Silva, after he stopped Baker for the traffic violation, Baker never contested Silva's stated contention that he was speeding. During the traffic stop, Baker orally consented to a search of his vehicle. During the search of Baker's vehicle, Silva discovered counterfeit money and other paraphernalia.

Dash cam video from Silva's patrol car was also admitted at trial showing Baker's car traveling past Silva's patrol car. Silva testified that the dash cam footage is taken from the night in question and shows vehicles "traveling at normal speeds on Ford Road." He identified Baker's car and stated that based on his observation, Baker was traveling over the posted speed limit of 40 miles per hour.

During cross-examination, Silva stated that he was not using a radar the night he stopped Baker. Silva testified that due to the position of his vehicle to the roadway he was observing, he could not use his radar and had to rely on his training and experience to determine that Baker was speeding. Silva acknowledged that his police report did not mention Baker's car "revving or the noise[,]" but explained that Baker was "traveling at [a] high rate of speed over the posted [speed limit]" based on his visual observation. Silva testified that his car dash cam did not pick up the noise because the 30 second prerecord before it activates does not record sound.

---

[2] Silva stated that heavy braking could also indicate that Baker was attempting to turn off of the roadway, but Baker did not make a turn until Silva got behind his vehicle and pulled him over.

After the State's direct examination of Trooper Silva, Baker's trial attorney moved to suppress the evidence seized from the stop. The trial court denied the motion, stating

> I'll note for the record that I watched the video very carefully, and the differential in speed between the defendant's vehicle and the other vehicles as they crossed in front of his camera was significant even to the naked eye to me from watching it. So, I think that that's consistent with the trooper's testimony at this point.

Before submitting the charge to the jury, Baker's trial attorney requested an instruction under article 38.23, arguing that the evidence presented a fact issue as to whether Baker was speeding when Silva made the decision to stop him. The next day, Baker's trial attorney dropped his request for the proposed jury instruction and expressly stated to the court on the record that he had no objections to the jury charge. Subsequently, the jury found Baker guilty of forgery and sentenced him to sixty years in the Texas Department of Criminal Justice. After filing a motion for new trial that was denied by operation of law, Baker timely appealed.

**Jury Charge Error**

"The first requirement for obtaining a jury instruction under Article 38.23, is that the defendant requests an instruction on a specific historical fact or facts." *Madden v. State*, 242 S.W.3d 504, 511 (Tex. Crim. App. 2007). A defendant can preserve error by presenting a proposed jury instruction or objecting to the lack of one. *See Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex. Crim. App. 2008) (citing

4

*Madden*, 242 S.W.3d at 513) (explaining that if a defendant fails to present a proposed jury instruction or object to the lack of one, review is for "egregious harm"). Where a defendant fails to do either of those, we analyze any error in the charge only for egregious harm under *Almanza*. *See id.*

During the charge conference, Baker's trial attorney initially requested the trial court include a jury instruction under section 38.23 regarding the initial traffic stop. Baker's trial counsel argued to the trial court that the police report did not mention "revving engines[,]" the officer did not use radar to determine Baker's speed and acted solely on a hunch, and the dash cam video does not demonstrate that Baker slammed on his brakes, making any evidence found in Baker's car inadmissible as "fruit of the poisonous tree." The trial court noted the objection but did not make a ruling. The next day, Baker's trial counsel announced to the court the following about its proposed jury charge:

> THE COURT: On the record in 18-09-12131-CR, The State of Texas versus Jeffrey Lane Baker. The defendant is present, along with his counsel and counsel for the State. We're outside the presence of the jury on the charge conference. Do you have any objections, proposed additions or deletions, [defendant's trial counsel]?
>
> [DEFENDANT'S TRIAL COUNSEL]: No, I don't, Judge. I spent the evening last night looking at 38.23, and I cannot find persuasive authority for its addition. So I do accept the charge in its present form.
>
> THE COURT: Okay. State?
>
> [THE STATE]: I have no objection to the charge, Judge.

5

Following the abandonment of his initial objection, Baker's trial counsel did not present a proposed jury charge instruction to the court under section 38.23 and failed to further object to the jury charge as presented. *See Rodriguez v. State*, 90 S.W.3d 340, 357 (Tex. App.—El Paso 2001, pet. ref'd) ("When a defendant creates the impression he is abandoning his objection, his initial objection is insufficient to preserve the issue for appeal."). Therefore, as the Court of Criminal Appeals noted in *Madden v. State*, we review an unobjected jury charge instruction under section 38.23 under the *Almanza* standard for "egregious harm[,]" but only if the defendant raised "a disputed fact issue." 242 S.W.3d at 513 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)).

"A defendant's right to the submission of jury instructions under Article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Id.* at 509–510 (citation omitted). An article 38.23 jury instruction is required to be included in the charge if evidence warrants its inclusion. *See id.*; *see also* Tex. Code of Crim. Proc. Ann. art. 38.23 ("In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.") In *Madden*, the Court of Criminal Appeals outlined three requirements for the mandatory

6

inclusion of a 38.23 instruction. "(1) The evidence heard by the jury must raise an issue of fact; (2) [t]he evidence on that fact must be affirmatively contested; and (3) [t]hat contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence." *Id.* at 510.

The question in this case is whether Baker was speeding when Silva made the decision to pull him over, giving rise to reasonable suspicion for the officer to conduct a traffic stop. To raise a fact issue, Baker must rely on more than a cross-examiner's questions, "[t]here must be some affirmative evidence[.]" *Id.* at 515. Baker must demonstrate affirmative evidence that he was not speeding and the evidence he directs this court's attention to does not demonstrate a fact issue. Baker directs the court's attention to Silva's own testimony that Baker never admitted that he was speeding. Additionally, Baker points to Silva's police report that does not state that Baker's engine was making "loud noises" before it passed Baker's vehicle. Silva never stated that Baker was not speeding, and his omission in his report regarding Baker's engine revving before he first observed Baker's vehicle does not create a fact issue that Baker was not speeding when he passed Silva's patrol car. Rather, the report notes that Baker's car was speeding, which is consistent with the Trooper's trial testimony. *See Kinnett v. State*, No. 01-18-01128-CR, 2020 WL 7502498, at *28 (Tex. App.—Houston [1st Dist.] Dec. 22, 2020, no pet.) (explaining that a dash cam video was not affirmative evidence warranting a 38.23 instruction

7

as it did "not indicate one way or the other whether the vehicle was running"). Since the record before us contains no affirmative evidence from which a jury could have reasonably concluded that Baker was not speeding just before Trooper Silva made the decision to conduct a traffic stop, we hold the trial court had no duty to instruct the jury to decide whether Silva conducted a legal stop under article 38.23. *See Madden*, 242 S.W.3d at 514. We overrule Baker's sole issue.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on February 1, 2021
Opinion Delivered July 14, 2021
Do Not Publish

Before Kreger, Horton and Johnson, JJ.